The Sultzer Law Group P.C.
*A Complex Litigation & Trial Practice*

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

May 25, 2023

**VIA ECF**
Honorable Nelson Stephen Román, U.S.D.J.
U.S. District Court for the Southern District of New York
300 Quarropas Street, Courtroom 218
White Plains, NY 10601

Re:   *Lurenz v. The Coca-Cola Company et al.*, No. 7:22-10941-NSR

Dear Judge Román,

We, along with our co-counsel at the Milberg firm, are counsel for Plaintiff in the above-referenced putative class action. We write in response to the letter by Defendants The Coca-Cola Company and The Simply Orange Juice Company (collectively, "Defendants") dated May 22, 2023 (ECF No. 18) (the "Letter") whereby Defendants request a pre-motion conference concerning their proposed motion to dismiss Plaintiff's Complaint.

In the Complaint, Plaintiff alleges that Defendants engage in deceptive and misleading business practices concerning the marketing and sales of its Simply Tropical juice drink (the "Product").[1] Plaintiff contends that Defendants manufacture, sell, and distribute the Product using a marketing and advertising campaign that prominently labels the Product as an "All Natural" juice drink that is "made simply" with "all-natural ingredients" when the Product contains per- and polyfluoralkyl substances ('PFAS'), a category of harmful synthetic chemicals.[2] Defendants seek permission to move to dismiss Plaintiff's Complaint on a number of baseless grounds and each is refuted below.

   I.   **Plaintiff Has Standing to Sustain His Claims.**

Defendants contend that Plaintiff "cannot show a concrete economic harm required to establish Article III standing."[3] Yet, to support this argument, Defendants rely exclusively on inapposite out-of-circuit decisions. Here, Plaintiff validly pleads that he incurred damages by way of a "price premium theory." As explained by the Second Circuit, "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."[4] This Court has noted that this theory of damages does not require plaintiffs to identify competitors or prices and that no heightened pleading requirement applies.[5]

---

[1] Complaint at ¶ 1. Plaintiff asserts causes of action against Defendants for violations of the Magnuson-Moss Warranty Act ("MMWA"), New York General Business Law ("N.Y. GBL") §§ 349 and 350, breach of express warranty, fraud, constructive fraud and unjust enrichment.
[2] Complaint at ¶¶ 2, 4.
[3] Letter at pg. 1.
[4] *Shaya Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2-3 (2d Cir. 2022).
[5] *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014)(noting that "post-*Iqbal* cases have found valid § 349 claims despite plaintiffs not identifying competitors or prices.")

Defendants next contend Plaintiff lacks standing for his claims because he does not allege that the specific Products *he* purchased contained PFAS.[6] "[A] Complaint that alleges facts demonstrating it is *at least plausible* that a plaintiff purchased a misbranded product sufficiently confers Article III standing."[7] Here, Plaintiff alleges that independent testing identified the presence of PFAS. Moreover, Plaintiff intends to amend his complaint to provide additional detail as to how PFAS become a part of the product through the manufacturing process how extensive testing shows that this is widespread and not an isolated issue. Taken together, these allegations make it more than merely plausible that Plaintiff's product contained PFAS.

### II. Plaintiff's Testing Allegations Support his Claim.

Defendants next attack Plaintiff's allegations concerning the results of independent testing which revealed the presence of PFAS. While Defendants claim that Plaintiff "alleged no factual detail about testing" this is demonstrably false. Plaintiff pleads that the testing conducted identified the presence of PFOA and PFOS – two particularly dangerous PFAS – at levels more than 100 times the EPA's recommended levels.[8] This level of detail goes far beyond what was provided when this Court discounted the value of testing results in *Myers v. Wakefern Food Corp.*, 2022 U.S. Dist. LEXIS 35981, at *14 (S.D.N.Y. Mar. 1, 2022). In *Myers*, this Court found that "Plaintiff fails to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors." Here, no such confusion exists as Plaintiff clearly alleges that testing identified the presence of synthetic PFAS in a product marketed as being "all natural."

### III. Plaintiff Has Sufficiently Alleged that Defendants' Marketing Would Deceive a Reasonable Consumer.

Defendants next argue that Plaintiff's GBL claims should be dismissed because "no reasonable consumer would understand PFAS—a substance that is not intentionally added to the Product, but that may migrate from other sources like food packaging or equipment, or that may be present in a water source—to be an ingredient."[9] This assertion by Defendants is meritless. Plaintiff alleges that Defendants included false statements in their marketing and omitted from their Product label and marketing the fact that the Product contains PFAS, a harmful substance. In an analogous matter concerning lead contamination, Judge Brodie determined that "a consumer could nevertheless reasonably conclude that the Product does not contain lead, as the lead content — even if minimal — is not disclosed to consumers."[10] Here, Defendants do not dispute that their Product contains PFAS or that this fact was omitted from the Product label. Whether these deceptive acts are sufficient to deceive a reasonable consumer is "generally a question of fact not suited for resolution at the motion to dismiss stage."[11] In the *Richburg* decision cited by Defendants, the Court determined the PFAS in that matter were not "ingredients" because the FDA "exempts '[s]ubstances migrating to food from equipment or packaging' from compliance with this regulation, meaning that they do not need to be included in the ingredient list."[12] Yet, that

---

[6] Letter at pg. 2.
[7] *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665-PAC, 2023 U.S. Dist. LEXIS 53220, at *11 (S.D.N.Y. Mar. 27, 2023).
[8] Complaint at ¶¶ 56-62.
[9] Letter at pp. 2-3.
[10] *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *39 (E.D.N.Y. Sep. 26, 2016).
[11] *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted) (collecting cases).
[12] *Richburg v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137 at * 22 (N.D. Ill. Feb. 8, 2023).

exemption only applies where inadvertently added substances are present at "insignificant levels."[13] In this case, Plaintiff specifically alleges that the levels of PFAS in question are significant and, thus, that this labeling exemption is inapplicable. The *Axon* decision also fails to support Defendants argument because, in that case, Judge Ross ruled that "it would be "*far more misleading* to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." *Id*.[14]

### IV.     Plaintiff's Omissions Claims are Validly Pled

Contrary to Defendants' assertion, Plaintiff's omissions claims are not preempted. Defendants are required to disclose all ingredients in their Product and, even those ingredients which are added incidentally are only exempt from traditional labeling requirements if they are present "at insignificant levels."[15] Thus, Plaintiff is not seeking to impose any additional labeling requirements on Defendants which do not exist. This duty to disclose imposed on Defendants also provides a sufficient basis for Plaintiff to pursue his omissions claims.[16]

### V.     Defendants' Arguments Concerning Plaintiff's Other Claims are Meritless.

Defendants end their Letter with a scattershot challenge to Plaintiff's other claims. Each of those arguments is refuted here. Plaintiff's MMWA claims survive because courts within the Second Circuit have upheld MMWA claims with fewer than 100 named plaintiffs,[17] and have also found that "natural" claims constitute express warranties.[18] On Plaintiff's express warranty claim, courts within this district have specifically found that the use of the phrase "all natural" on a product label supports a claim under New York law.[19] Furthermore, Plaintiff's pleadings have put Defendants on notice of her claims.[20] Because New York permits alternative pleading, it is premature to dismiss an unjust enrichment claim where Plaintiff could conceivably be entitled to restitution despite the failure of their other claims.[21] In addition, "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350."[22]

Based on the foregoing, Plaintiff respectfully contends that Defendant's proposed motion to dismiss will be without merit.

---

[13] 21 C.F.R. § 101.100(a)(3)(iii).
[14] *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 183 (E.D.N.Y. Dec. 10, 2018).
[15] 21 C.F.R. § 101.100(a)(3) and (a)(3)(iii).
[16] *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V*., 68 F.3d 1478, 1483 (2d Cir. 1995) (a valid claim can be based on a concealment of facts "if the non-disclosing party has a duty to disclose.").
17 *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212 (S.D.N.Y. 2015).
18 *See Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021); *In re Frito-Lay,* 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013); *Goldemberg*, 8 F. Supp. 3d at 478.
[19] *In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *16, *27.
[20] *Panda Capital Corp. v. Kopo Int'l*, 242 A.D.2d 690, 692, 662 N.Y.S.2d 584, 586 (2 Dep't 1997).
[21] *See, Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *34 (S.D.N.Y June 22, 2020).
[22] *Warner v. StarKist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *7 (N.D.N.Y. Mar. 25, 2019).

                Respectfully submitted,

                **THE SULTZER LAW GROUP P.C.**

                Jason Sultzer

cc: All Counsel of Record