USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   5/30/2023

**MEMORANDUM ENDORSEMENT**

Lurenz v. The Coca-Cola Company et al, 22-cv-10941 (NSR)

 

The Court is in receipt of the attached letter from Defendants, dated May 22, 2023, seeking leave to file a motion to dismiss, and the attached letter from Plaintiffs, dated May 25, 2023, opposing leave.

The Court waives the pre-motion conference requirement and grants Defendants leave to file a motion to dismiss in accordance with the following briefing schedule:

(1) Defendants' moving papers are to be served (not filed) on June 30, 2023;
(2) Plaintiffs' opposition papers are to be served (not filed) on July 31, 2023; and
(3) Defendants' reply papers are to be served on August 15, 2023.

All motion papers are to be filed by the parties on the reply date, August 15, 2023. The parties are directed to provide Chambers with two physical courtesy copies of their motion papers on the same date they are served on opposing counsel. The parties are further directed to provide the Court with an electronic courtesy copy of the motion papers as they are served per this Court's local emergency civil rules.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 18.

DATED: May 30, 2023

White Plains, NY

SO ORDERED:

_____
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

**ALSTON & BIRD**

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

**Angela M. Spivey**                    Direct Dial: **404-881-7857**                    Email: **angela.spivey@alston.com**

May 22, 2023

**VIA ECF**

Honorable Nelson Stephen Román, U.S.D.J.
U.S. District Court for the Southern District of New York
300 Quarropas Street, Courtroom 218
White Plains, NY 10601

Re:   *Lurenz v. The Coca-Cola Company et al.*, No. 7:22-cv-10941-NSR

Dear Judge Román:

We represent Defendants The Coca-Cola Company and The Simply Orange Juice Company (collectively, "Coca-Cola") in this matter. Coca-Cola intends to move to dismiss the Class Action Complaint ("CAC") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6). We accordingly write to request a pre-motion conference regarding Coca-Cola's intended motion and briefly state here the grounds for the motion, pursuant to Part 3.A.ii of the Court's Individual Practices in Civil Cases.

In this putative class action, Plaintiff claims that the Simply® Tropical juice drink (the "Product") is mislabeled as an "All Natural" juice drink that is "made simply" with "all-natural ingredients" because it allegedly contains trace amounts of per- and polyfluoralkyl substances ("PFAS"), ubiquitous manufactured chemicals that are present at low levels in the environment. *See* CAC ¶ ¶ 33 n.14 (source incorporated by reference into CAC). Certain PFAS may be linked to harmful health effects at indeterminate high levels, *id.* at ¶ 38 n.18 (source also incorporated by reference), but Plaintiff has not pled that he or anyone else has suffered or likely will suffer adverse health outcomes. Plaintiff asserts claims for: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"); (2) violation of N.Y. Gen. Bus. Law ("GBL") § 349; (3) violation of GBL § 350; (4) breach of express warranty; (5) fraud; (6) constructive fraud; and (7) unjust enrichment.

**I.     Plaintiff Lacks Article III Standing to Pursue His Claims**

Plaintiff only claims economic injury as a result of the alleged misrepresentations or omissions—that he did not receive the full benefit of his bargain and/or that he paid a price premium, CAC ¶ 91—but he cannot show a concrete economic harm required to establish Article III standing. In cases such as this, involving the presence of purportedly unsafe chemicals in consumer products, courts have held that a consumer cannot establish standing under a benefit-of-the-bargain theory where: (1) the consumer received a

Alston & Bird LLP                                                                                                    www.alston.com

Atlanta  |  Beijing  |  Brussels  |  Charlotte  |  Dallas  |  Fort Worth  |  London  |  Los Angeles  |  New York  |  Raleigh  |  San Francisco  |  Silicon Valley  |  Washington, D.C.

Honorable Nelson Stephen Román, U.S.D.J.
May 22, 2023
Page 2

functioning product he or she consumed without incident; and (2) the consumer claims the product is worth less because of the presence of the chemicals, but fails to allege that the chemicals actually pose a substantial and credible risk of future harm. *See, e.g.*, *In re Johnson & Johnson Talcum Powder*, 903 F.3d 278, 287, 290 (3d Cir. 2018); *Richburg v. ConAgra Brands, Inc.*, No. 22-cv-2420, 2023 U.S. Dist. LEXIS 21137, at *12 (N.D. Ill. Feb. 8, 2023) (rejecting benefit-of-the-bargain theory in PFAS consumer goods context); *In re Fruit Juice Prods.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011). Plaintiff also cannot proceed under a price-premium theory given that the Complaint contains only threadbare, factually unsupported allegations that he paid a premium, and this is not a situation where the Court can readily infer that the presence of PFAS—substances that have not caused any harm or even a credible risk of future harm—inherently renders the product inferior or worth less. *See, e.g.*, *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 U.S. Dist. LEXIS 109455, at *44 (D.N.J. July 14, 2017), *aff'd* 903 F.3d 278 (3d Cir. 2018); *In re Gerber Products Company Heavy Metals Baby Food Litigation*, No. 1:21-cv-269, 2022 U.S. Dist. LEXIS 189822, at *38 (E.D. Va. Oct. 17, 2022).

Plaintiff also has not pled a particularized injury because he has not plausibly alleged that the Product he purchased contained PFAS. *See, e.g.*, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300, 2019 U.S. Dist. LEXIS 48595, at *6 (N.D.N.Y. Mar. 25, 2019). Plaintiff relies on unspecified third-party testing of the Product generally but does not explain how that testing plausibly shows the actual juice drink *he* purchased contained PFAS. *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665, 2023 U.S. Dist. LEXIS 53220, at *12-13 (S.D.N.Y. Mar. 27, 2023) (dismissing PFAS case relying on similar third-party testing).

Finally, as a past purchaser, Plaintiff lacks Article III standing to seek injunctive relief. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

## II.     Plaintiff's Testing Allegations Are Insufficiently Pled

Plaintiff's entire case rests on "independent testing" purportedly demonstrating the presence of PFAS in the Product. But Plaintiff alleged no factual detail about the testing, such as who conducted it, the methodology, or whether it was the juice product or bottle that purportedly contained PFAS. This Court has stated in other cases that such bare-bones allegations regarding testing are insufficient. *Myers v. Wakefern Food Corp.*, No. 20-cv-8470-NSR, 2022 U.S. Dist. LEXIS 35981, at *13-14 (S.D.N.Y. Mar. 1, 2022); *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-cv-2933-NSR, 2022 U.S. Dist. LEXIS 15994, at *15 (S.D.N.Y. Jan. 28, 2022); *Turnipseed v. Simply Orange Juice Co.*, No. 20-cv-8677-NSR, 2022 U.S. Dist. LEXIS 38823, at *14 (S.D.N.Y. Mar. 4, 2022).

## III.    All of Plaintiff's Claims Fail Because He Has Not Plausibly Alleged That a Reasonable Consumer Would Be Misled

Plaintiff's theory of deception is that the Product's representations that it is an "All Natural" juice drink "made simply" with "all natural ingredients" convey to consumers that it is free from artificial ***ingredients*** "like PFAS." But no reasonable consumer would

Honorable Nelson Stephen Román, U.S.D.J.
May 22, 2023
Page 3

understand PFAS—a substance that is not intentionally added to the Product, but that may migrate from other sources like food packaging or equipment, or that may be present in a water source—to be an ingredient. *See Richburg*, 2023 U.S. Dist. LEXIS 21137, at *23 (as a matter of law, reasonable consumer would not interpret "only real ingredients" to mean free of PFAS); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 173 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.,* 813 F. App'x 701 (2d Cir. 2020) (orange juice containing herbicide glyphosate not mislabeled as "all natural" because glyphosate is not an ingredient added to the product). In fact, FDA exempts migratory substances like PFAS from the mandated ingredient list on food products. *See Richburg*, 2023 U.S. Dist. LEXIS 21137, at *22-23 (citing 21 C.F.R. § 101.100(a)(3)(iii)).

**IV.     Plaintiff's Omissions-Based Claims Fail Because They Are Preempted, and He Has Not Plausibly Alleged Knowledge**

Because FDA exempts migratory substances like PFAS from inclusion on an ingredient list, Plaintiff's attempt to impose liability for failing to include such a disclosure is expressly preempted under the Nutrition Labeling & Education Act. *See* 21 U.S.C. § 343-1(a)(2). In addition, Plaintiff has failed to plausibly allege that Coca-Cola was aware of the presence of PFAS in the Product, which dooms his omissions-based fraud and consumer protection claims. *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241, 244 (S.D.N.Y. 2022).

**V.      In Addition to the Above, the Claims Fail on Other, Independent Grounds**

Plaintiff's MMWA claim fails to satisfy the MMWA's independent jurisdictional requirement of 100 named plaintiffs. *Bayne v. Target Corp.*, No. 1:21-cv-05938, 2022 U.S. Dist. LEXIS 172973, at *11 (S.D.N.Y. Sep. 23, 2022). Plaintiff also has not sufficiently asserted underlying breach of warranty claims to support the MMWA claim. The implied warranty claim fails because he has not shown the Product was unfit for consumption (he consumed it without incident). *Santiful*, 2023 U.S. Dist. LEXIS 40920, at *14. He also has not alleged privity or pre-suit notice. *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 361 (S.D.N.Y. 2021); *Spurck v. Demet's Candy Co.*, *LLC*, No. 21-cv-05506-NSR, 2022 U.S. Dist. LEXIS 133685, at *13 (S.D.N.Y. July 27, 2022). The express warranty claim similarly fails for lack of pre-suit notice. *Spurck*, 2022 U.S. Dist. LEXIS 133685, at *12-13. The GBL and fraud claims fail because Plaintiff has not shown how failing to disclose the alleged presence of trace amounts of PFAS that did not cause any health effects is material. *See Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-cv-1597, 2010 U.S. Dist. LEXIS 90505, at *29 (N.D. Cal. Sep. 1, 2010). Plaintiff also fails to plead fraudulent intent or a special relationship. *Santiful*, 2023 U.S. Dist. LEXIS 40920, at *15; *Apace Communs., Ltd. v. Burke*, 522 F. Supp. 2d 509, 519 (W.D.N.Y. 2007). Finally, the unjust enrichment claim is merely duplicative of Plaintiff's other claims. *Warren v. Coca-Cola Co.*, No. 22-cv-6907, 2023 U.S. Dist. LEXIS 70494, at *24 (S.D.N.Y. Apr. 21, 2023).

Sincerely,

ALSTON & BIRD LLP

_____
Angela M. Spivey

*Attorney for Defendants*

Case 7:22-cv-10941-NSR   Document 28   Filed 05/30/23   Page 5 of 9



A Complex Litigation & Trial Practice

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

May 25, 2023

**VIA ECF**
Honorable Nelson Stephen Román, U.S.D.J.
U.S. District Court for the Southern District of New York
300 Quarropas Street, Courtroom 218
White Plains, NY 10601

**Re:**   *Lurenz v. The Coca-Cola Company et al.*, No. 7:22-10941-NSR

Dear Judge Román,

We, along with our co-counsel at the Milberg firm, are counsel for Plaintiff in the above-referenced putative class action.  We write in response to the letter by Defendants The Coca-Cola Company and The Simply Orange Juice Company (collectively, "Defendants") dated May 22, 2023 (ECF No. 18) (the "Letter") whereby Defendants request a pre-motion conference concerning their proposed motion to dismiss Plaintiff's Complaint.

In the Complaint, Plaintiff alleges that Defendants engage in deceptive and misleading business practices concerning the marketing and sales of its Simply Tropical juice drink (the "Product").[1] Plaintiff contends that Defendants manufacture, sell, and distribute the Product using a marketing and advertising campaign that prominently labels the Product as an "All Natural" juice drink that is "made simply" with "all-natural ingredients" when the Product contains per- and polyfluoralkyl substances ('PFAS'), a category of harmful synthetic chemicals.[2] Defendants seek permission to move to dismiss Plaintiff's Complaint on a number of baseless grounds and each is refuted below.

    **I.**    <u>**Plaintiff Has Standing to Sustain His Claims.**</u>

Defendants contend that Plaintiff "cannot show a concrete economic harm required to establish Article III standing."[3]  Yet, to support this argument, Defendants rely exclusively on inapposite out-of-circuit decisions.  Here, Plaintiff validly pleads that he incurred damages by way of a "price premium theory."  As explained by the Second Circuit, "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."[4]  This Court has noted that this theory of damages does not require plaintiffs to identify competitors or prices and that no heightened pleading requirement applies.[5]

---

[1] Complaint at ¶ 1.  Plaintiff asserts causes of action against Defendants for violations of the Magnuson-Moss Warranty Act ("MMWA"), New York General Business Law ("N.Y. GBL") §§ 349 and 350, breach of express warranty, fraud, constructive fraud and unjust enrichment.
[2] Complaint at ¶¶ 2, 4.
[3] Letter at pg. 1.
[4] *Shaya Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2-3 (2d Cir. 2022).
[5] *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014)(noting that "post-*Iqbal* cases have found valid § 349 claims despite plaintiffs not identifying competitors or prices.")

Defendants next contend Plaintiff lacks standing for his claims because he does not allege that the specific Products *he* purchased contained PFAS.[6] "[A] Complaint that alleges facts demonstrating it is *at least plausible* that a plaintiff purchased a misbranded product sufficiently confers Article III standing."[7]  Here, Plaintiff alleges that independent testing identified the presence of PFAS.  Moreover, Plaintiff intends to amend his complaint to provide additional detail as to how PFAS become a part of the product through the manufacturing process how extensive testing shows that this is widespread and not an isolated issue.  Taken together, these allegations make it more than merely plausible that Plaintiff's product contained PFAS.

## II.     Plaintiff's Testing Allegations Support his Claim.

Defendants next attack Plaintiff's allegations concerning the results of independent testing which revealed the presence of PFAS.  While Defendants claim that Plaintiff "alleged no factual detail about testing" this is demonstrably false.  Plaintiff pleads that the testing conducted identified the presence of PFOA and PFOS – two particularly dangerous PFAS – at levels more than 100 times the EPA's recommended levels.[8]  This level of detail goes far beyond what was provided when this Court discounted the value of testing results in *Myers v. Wakefern Food Corp.*, 2022 U.S. Dist. LEXIS 35981, at *14 (S.D.N.Y. Mar. 1, 2022).  In *Myers*, this Court found that "Plaintiff fails to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors."  Here, no such confusion exists as Plaintiff clearly alleges that testing identified the presence of synthetic PFAS in a product marketed as being "all natural."

## III.    Plaintiff Has Sufficiently Alleged that Defendants' Marketing Would Deceive a Reasonable Consumer.

Defendants next argue that Plaintiff's GBL claims should be dismissed because "no reasonable consumer would understand PFAS—a substance that is not intentionally added to the Product, but that may migrate from other sources like food packaging or equipment, or that may be present in a water source—to be an ingredient."[9]  This assertion by Defendants is meritless.  Plaintiff alleges that Defendants included false statements in their marketing and omitted from their Product label and marketing the fact that the Product contains PFAS, a harmful substance.  In an analogous matter concerning lead contamination, Judge Brodie determined that "a consumer could nevertheless reasonably conclude that the Product does not contain lead, as the lead content — even if minimal — is not disclosed to consumers."[10]  Here, Defendants do not dispute that their Product contains PFAS or that this fact was omitted from the Product label. Whether these deceptive acts are sufficient to deceive a reasonable consumer is "generally a question of fact not suited for resolution at the motion to dismiss stage."[11]  In the *Richburg* decision cited by Defendants, the Court determined the PFAS in that matter were not "ingredients" because the FDA "exempts '[s]ubstances migrating to food from equipment or packaging' from compliance with this regulation, meaning that they do not need to be included in the ingredient list."[12]  Yet, that

---

[6] Letter at pg. 2.
[7] *Onaka v. Shiseido Ams. Corp.*, No. 21-cv-10665-PAC, 2023 U.S. Dist. LEXIS 53220, at *11 (S.D.N.Y. Mar. 27, 2023).
[8] Complaint at ¶¶ 56-62.
[9] Letter at pp. 2-3.
[10] *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *39 (E.D.N.Y. Sep. 26, 2016).
[11] *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted) (collecting cases).
[12] *Richburg v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137 at * 22 (N.D. Ill. Feb. 8, 2023).

exemption only applies where inadvertently added substances are present at "insignificant levels."[13] In this case, Plaintiff specifically alleges that the levels of PFAS in question are significant and, thus, that this labeling exemption is inapplicable. The *Axon* decision also fails to support Defendants argument because, in that case, Judge Ross ruled that "it would be "*far more misleading* to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." *Id*.[14]

### IV.     Plaintiff's Omissions Claims are Validly Pled

Contrary to Defendants' assertion, Plaintiff's omissions claims are not preempted. Defendants are required to disclose all ingredients in their Product and, even those ingredients which are added incidentally are only exempt from traditional labeling requirements if they are present "at insignificant levels."[15] Thus, Plaintiff is not seeking to impose any additional labeling requirements on Defendants which do not exist. This duty to disclose imposed on Defendants also provides a sufficient basis for Plaintiff to pursue his omissions claims.[16]

### V.     Defendants' Arguments Concerning Plaintiff's Other Claims are Meritless.

Defendants end their Letter with a scattershot challenge to Plaintiff's other claims. Each of those arguments is refuted here. Plaintiff's MMWA claims survive because courts within the Second Circuit have upheld MMWA claims with fewer than 100 named plaintiffs,[17] and have also found that "natural" claims constitute express warranties.[18] On Plaintiff's express warranty claim, courts within this district have specifically found that the use of the phrase "all natural" on a product label supports a claim under New York law.[19] Furthermore, Plaintiff's pleadings have put Defendants on notice of her claims.[20] Because New York permits alternative pleading, it is premature to dismiss an unjust enrichment claim where Plaintiff could conceivably be entitled to restitution despite the failure of their other claims.[21] In addition, "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350."[22]

Based on the foregoing, Plaintiff respectfully contends that Defendant's proposed motion to dismiss will be without merit.

---

[13] 21 C.F.R. § 101.100(a)(3)(iii).
[14] *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 183 (E.D.N.Y. Dec. 10, 2018).
[15] 21 C.F.R. § 101.100(a)(3) and (a)(3)(iii).
[16] *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V*., 68 F.3d 1478, 1483 (2d Cir. 1995) (a valid claim can be based on a concealment of facts "if the non-disclosing party has a duty to disclose.").
17 *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212 (S.D.N.Y. 2015).
18 *See Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021); *In re Frito-Lay,* 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013); *Goldemberg*, 8 F. Supp. 3d at 478.
[19] *In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *16, *27.
[20] *Panda Capital Corp. v. Kopo Int'l*, 242 A.D.2d 690, 692, 662 N.Y.S.2d 584, 586 (2 Dep't 1997).
[21] *See, Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *34 (S.D.N.Y June 22, 2020).
[22] *Warner v. StarKist Co.*, No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *7 (N.D.N.Y. Mar. 25, 2019).

                                            Respectfully submitted,

                                    **THE SULTZER LAW GROUP P.C.**

                                                      Jason Sultzer

cc: All Counsel of Record