**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLAINTIFF JOSEPH LURENZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Docket No. 7:22-cv-10941-NSR |
| v. | |
| THE COCA-COLA COMPANY and THE SIMPLY ORANGE JUICE COMPANY, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Dated: September 21, 2023

**THE SULTZER LAW GROUP P.C.**
Philip J. Furia
Jason P. Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: 845-483-7100
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Gary Klinger*
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Erin Ruben*
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com


**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Russell Busch (6329500)
J. Hunter Bryson*
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com
hbryson@milberg.com


* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………………i.-ii

Table of Authorities……………………………………………………………………iii-viii

INTRODUCTION…………………………...…………………………………………...1

STANDARD OF REVIEW…………………………………………………………….3

ARGUMENT……………………………………………………………………...3

I.     THE EXTRANEOUS MATERIALS CITED BY DEFENDANTS
CANNOT SERVE AS A BASIS FOR DISMISSAL…………………………………3

II.    PLAINTIFF HAS ESTABLISHED STANDING FOR HIS CLAIMS………………5

    A.  Plaintiff validly establishes standing using a price premium theory……………...5

    B.  Plaintiff has sufficiently alleged the presence of PFAS in the Product…………...7

III.   PLAINTIFF'S TESTING ALLEGATIONS ARE MORE THAN
SUFFICIENT TO STATE A CLAIM……………………………………………...9

IV.   PLAINTIFF HAS STATED VALID CLAIMS UNDER GBL § 349 AND 350……10

    A.  A "reasonable consumer" analysis should not be performed at the pleading
stage but, if performed, Defendants' omissions would deceive a reasonable
consumer……………………………………………………………………………10

    B.  Materiality is not a separate element to be pled under the GBL and Plaintiff's
allegations are sufficient……………………………………………………………14

V.    PLAINTIFF HAS SUFFICIENTLY PLED HIS OMISSIONS BASED CLAIMS…14

    A.  Plaintiff has sufficiently alleged that Defendants had a duty to disclose the
presence of PFAS in its product……………………………………………………15

    B.  Plaintiff's omissions claim is not negated by a statutory exemption…………......16

VI.   PLAINTIFF VALIDLY BASES A NEGLIGENCE PER SE CLAIM ON
VIOLATIONS OF THE FDCA AND AML………………………………………...17

VII.  PLAINTIFF HAS STATED A VALID CLAIM UNDER THE MAGNUSON-
MOSS WARRANTY ACT……………………………………………………………19

VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD NOT BE
          DISMISSED AT THIS TIME…………………………………………………….20

IX.   IF THIS COURT IS INCLINED TO GRANT DEFENDANTS' MOTION,
        LEAVE SHOULD BE GRANTED TO PERMIT PLAINTIFF TO REPLEAD….......21

CONCLUSION…………………………………………………………………………………..21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
750 N.E.2d 1097 (2001)..................................................................................................18

*AMBAC Assurance Corp. v. United States Bank Nat'l Ass'n*,
328 F. Supp. 3d 141 (S.D.N.Y. 2018)..........................................................................18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................3

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018) .............................................................................13

*Barclay v. ICON Health & Fitness, Inc.*,
2020 U.S. Dist. LEXIS 191215,
2020 WL 6083704 (D. Minn. Oct. 15, 2020) ..................................................................20

*Barton v. Pret A Manger (USA) Ltd.*,
535 F. Supp. 3d 225 (S.D.N.Y. 2021).................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................3

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*,
No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ...................................17

*Brady v. Anker Innovations Ltd.*,
No. 18-cv-11396(NSR),
2020 U.S. Dist. LEXIS 5672 (S.D.N.Y. Jan. 13, 2020).........................................10

*Braynina v. TJX Cos., Inc.*,
No. 15 Civ. 5897 (KPF),
2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016).........................................................10

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016).............................................................................11

*Casey v. Odwalla, Inc.*,
338 F. Supp. 3d 284 (S.D.N.Y. 2018)................................................................................3

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)...............................................................................................4

*Clinger v. Edgewell Pers. Care Brands, LLC*,
   No. 3:21-cv-1040 (JAM),
   2023 WL 2477499 (D. Conn. Mar. 13, 2023) ...................................................................8

*Cooper v. Anheuser-Busch*,
   LLC, 553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...................................................................14

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...................................................................14

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ...................................................................11

*Ebin v. Kangadis Food Inc.*,
   No. 13 CIV. 2311 JSR,
   2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...................................................................5

*Epstein v. N.Y.C. Dist. Council of Carpenters Ben. Funds*,
   2016 U.S. Dist. LEXIS 56545 (S.D.N.Y. Apr. 28, 2016) ...................................................................4

*Ezagui v. Dow Chemical Corp.*,
   598 F.2d 727 (2d Cir. 1979) ...................................................................18

*In re Frito-Lay*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................................................................20

*Gain v. Eastern Reinforcing Serv. Inc.*,
   193 A.D.2d 255, 603 N.Y.S.2d 189 (3d Dept.1993) ...................................................................18

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   No. 1:18-cv-300,
   2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ...................................................................8

*In re General Mills Glyphosate Litig.*,
   16 Civ. 2869,
   2017 WL 2983877 (D. Minn. July 12, 2017) ...................................................................13

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ...................................................................4

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...................................................................7, 20

*Grossman v. Simply Nourish Pet Food Co. LLC*,
   516 F. Supp. 3d 261 (E.D.N.Y. 2021) ...................................................................10, 20

*Harris v. Pfizer Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022) ...................................................................15

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   No. 18-cv-06664,
   2020 WL 5910071 (N.D. Cal., October 6, 2020) ...................................................13

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015)......................................................................11

*Holt v. Foodstate, Inc.*,
   No. 15cv78 L (JMA),
   2015 U.S. Dist. LEXIS 173403 (S.D. Cal. Dec. 31, 2015)................................12, 17

*John v. Whole Food Markets Grp., Inc.*,
   858 F.3d 732 (2d Cir. 2017)..................................................................................5, 7

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................................5

*Lateef v. Pharmavite LLC*,
   No. 12-5611,
   2012 WL 5269619 (N.D. Ill. Oct. 24, 2012)............................................................17

*Lawrence v. Sofamor*,
   1999 U.S. Dist. LEXIS 12228, at *18 (N.D.N.Y. Aug. 2, 1999) ...........................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)....................................................................................21

*Mason v. Reed's Inc.*,
   18-cv-10826 (JGK),
   2021 U.S. Dist. LEXIS 16556 (S.D.N.Y. Jan. 28 2021)............................................6

*McCracken v. Verisma Sys.*,
   No. 6:14-cv-06248(MAT),
   2017 U.S. Dist. LEXIS 73666 (W.D.N.Y. May 15, 2017)......................................20

*In re Mission Constr. Litig.*,
   2013 U.S. Dist. LEXIS 124926 (S.D.N.Y. Aug. 30, 2013)......................................18

*Mogull v. Pete and Gerry's Organics, LLC*,
   2022 U.S. Dist. LEXIS 35237 (S.D.N.Y. Feb. 28, 2022)........................................11

*In re MPM Silicones, L.L.C.*,
   596 B.R. 416 (S.D.N.Y. 2019)....................................................................................3

*Myers v. Wakefern Food Corp.*,
   2022 U.S. Dist. LEXIS 35981 (S.D.N.Y. Mar. 1, 2022) .....................................9, 10

*Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*,
  710 F.3d 71 (2d Cir. 2013).............................................................................5

*Noto v. 22nd Century Grp., Inc.*,
  35 F.4th 95 (2d Cir. 2022) ...........................................................................21

*Onaka v. Shiseido Ams. Corp.*,
  No. 21-cv-10665-PAC,
  2023 U.S. Dist. LEXIS 53220 (S.D.N.Y. Mar. 27, 2023) ...........................8

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)........................................................................10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ....................................................................................20

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019).........................................................13

*Petrosino v. Stearn's Prod., Inc.*,
  No. 16-cv-7735 (NSR),
  2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. Mar. 30, 2018) ..........................10

*Porat v. Lincoln Towers Cmty. Ass'n*,
  464 F.3d 274 (2d Cir. 2006) (per curiam)...................................................21

*Raines v. Byrd*,
  521 U.S. 811 (1997)........................................................................................5

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
  68 F.3d 1478 (2d Cir. 1995)........................................................................15

*Richburg v. ConAgra Brands, Inc.*,
  2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023) .............................12, 13, 16

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)......................................................................4, 16

*Sackin v. Transperfect Glob., Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017)..........................................................19

*Santiful v. Wegmans Food Mkts., Inc.*,
  No. 20-CV-2933 (NSR),
  2022 U.S. Dist. LEXIS 15994 (S.D.N.Y. Jan. 28, 2022)..........................9, 10

*Segedie v. Hain Celestial Grp., Inc.*,
   No. 14-cv-5029 (NSR),
   2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015)......................................6, 11

*Shaya Eidelman v. Sun Prods. Corp.*,
   No. 21-1046-cv,
   2022 U.S. App. LEXIS 15480 (2d Cir. 2022) ..........................................................6

*Sita v. Danek Med.*,
   43 F. Supp. 2d 245 (E.D.N.Y. 1999) .....................................................................18

*Sitt v. Nature's Bounty, Inc.*,
   2016 U.S. Dist. LEXIS 131564, at *38 (E.D.N.Y. Sep. 26, 2016).........................12

*Stuve v. Kraft Heinz Co.*,
   No. 21-CV-1845,
   2023 U.S. Dist. LEXIS 6184 (N.D. Ill. Jan. 12, 2023) .....................................12, 17

*Turnipseed v. Simply Orange Juice Co.*,
   2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. Mar. 4, 2022) ......................................9, 10

*Twisted Records, Inc. v. Rauhofer*,
   2005 U.S. Dist. LEXIS 3313 (S.D.N.Y. Mar. 3, 2005) ...........................................4

*Twohig v. Shop-Rite Supermarkets, Inc.*,
   519 F. Supp. 3d 154 (S.D.N.Y. 2021).....................................................................14

*Velez v. RM Acquisition, LLC*,
   No. 21-cv-02779,
   2023 U.S. Dist. LEXIS 69976 (N.D. Ill. Apr. 21, 2023) ...................................19, 20

*Warner v. StarKist Co.*,
   No. 1:18-cv-406,
   2019 U.S. Dist. LEXIS 48587 (N.D.N.Y. Mar. 25, 2019).......................................20

**Statutes**

21 U.S.C. § 342...........................................................................................................2

21 U.S.C. §§ 342, 343 ................................................................................................2

21 U.S.C. § 343...........................................................................................................2

21 C.F.R. § 101.100(a)(3)(iii).....................................................................................12

21 C.F.R. § 101.100(a)(3) and (a)(3)(iii) ..................................................................16

15 USCS § 2310(d)(1)(A)...........................................................................................19

15 USCS § 2310(d)(1)(B) ..................................................................................................19

15 USCS § 2310(d)(3)(c) ..................................................................................................19

Federal Food, Drug & Cosmetic Act .................................................................................2

Federal Rule of Civil Procedure 8(a)(2) ...........................................................................4

MAGNUS MOSS WARRANTY ACT ...............................................................................19

New York General Business Law § 349 ..............................................................3, 6, 7, 10, 20

New York General Business Law § 350 .................................................................3, 6, 10, 20

State Agriculture & Markets Law § 199-a .........................................................................3

Rule 9(b) ..........................................................................................................................10

Rule 12(b)(6) ............................................................................................................3, 16, 21

Rule 56 ..............................................................................................................................4

## <u>INTRODUCTION</u>

Plaintiff Joseph Lurenz respectfully submits this memorandum in opposition to the Motion to Dismiss (hereinafter "Motion" or "MTD") filed by Defendants The Coca-Cola Company and The Simply Orange Juice Company (collectively, "Defendants"), seeking dismissal of Plaintiff's First Amended Complaint (ECF No. 25, hereinafter "FAC").

This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendants' Simply Tropical juice drink (the "Product"). Plaintiff alleges that the Product is prominently labeled as being an "All Natural" juice drink that is "made simply" with "all-natural ingredients." FAC ¶ 4.  Yet, Plaintiff's independent testing reveals that the Product contains per- and polyfluoroalkyl substances ("PFAS"), "a category of synthetic substances that are, by definition, artificial."  *Id.* ¶ 1.

The danger of PFAS chemicals are well known. Current peer-reviewed scientific studies have shown that PFAS exposure is linked to fertility issues, developmental delays, increased risk of cancer, increased cholesterol and obesity, and reduced immune response. *Id.* ¶ 38. The Environmental Protection Agency (EPA) recently confirmed that the levels at which negative health effects could occur from PFAS exposure are much lower than previously understood, including <u>near zero</u> in some cases. *Id.* ¶ 59. There is currently no treatment to remove PFAS from the body, so the EPA recommends consumers limit exposure to protect their individual health, including by reducing exposure during daily activities.  *Id.* ¶¶ 49-50.

Nowhere on the Product's label is PFAS listed as an ingredient, yet Plaintiff's independent testing, which was conducted according to industry standards, has shown the presence of multiple PFAS substances in the Product, present in amounts more than 100 times the EPA's recommended levels *Id.* ¶ 62.

Defendants' uniform and pervasive marketing is intentionally designed to convince reasonable consumers that the Product is safe to drink daily. *Id.* ¶ 26. The presence of toxic PFAS in the Product is entirely inconsistent with all of Defendants' marketing claims, including those appearing on the Product's front label where they cannot be missed by consumers. Defendants are well-aware that consumers are increasingly demanding beverage options that support their wellness goals. Plaintiff and other Class Members were injured as a result of Defendants' unlawful conduct when they bargained for a natural, safe and healthy drink and received a Product containing PFAS, which is unnatural by definition. *Id.*

In addition to Defendants' affirmative misrepresentations related to the Product, the presence of PFAS also renders it misbranded and adulterated under state and federal law, and therefore illegal to sell. The Product is subject to the Federal Food, Drug & Cosmetic Act ("FDCA"), which prohibits the sale of food products that are adulterated or misbranded. See 21 U.S.C. §§ 342, 343. A food product is deemed "adulterated" if it "if it "contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342. A food product is deemed "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343.

Plaintiff and consumers unwittingly purchased the misbranded and adulterated Product, induced by Defendants' express representation that the Product was "natural." Plaintiff and consumers at-large have been purchasing and using the Product for years, continually accumulating the PFAS "forever chemicals" in their bodies all the while. Throughout this time, Defendants profited by charging a price premium for the adulterated and misbranded Product. If Defendants had been truthful about the presence of PFAS in the Product, which renders it far from "natural," it could not have charged as much for the Product. Plaintiff brought suit to hold Defendants accountable for this longstanding and ongoing harm to consumers.

Plaintiff commenced the instant action against Defendants setting forth causes of action for: violation of New York General Business Law ("GBL")§§ 349 and 350; breach of express warranty; negligent misrepresentation, violation of the New York State Agriculture & Markets Law ("AML") § 199-a; negligence per se; and unjust enrichment.[1]  For the reasons detailed herein, Defendants' Motion should be denied.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court has emphasized that it "must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor[.]" *In re MPM Silicones, L.L.C.,* 596 B.R. 416, 427 (S.D.N.Y. 2019); *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

**ARGUMENT**

**I.     THE EXTRANEOUS MATERIALS CITED BY DEFENDANTS CANNOT SERVE AS A BASIS FOR DISMISSAL**

In their Motion, Defendants refer extensively to materials that are not contained or referenced in the Complaint.  Plaintiff contends that these irrelevant materials should be excluded from this Court's review of Defendants' Motion.

---

[1] Plaintiff hereby agrees to withdraw its claim for breach of express warranty, without prejudice.

Second Circuit precedent holds that "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). "Where . . . the moving party relies on matters outside the pleading in support of its motion, the motion may not be capable of resolution on the basis of the complaint alone." *Twisted Records, Inc. v. Rauhofer*, 2005 U.S. Dist. LEXIS 3313, at *13 (S.D.N.Y. Mar. 3, 2005). Thus, a Court presented with extraneous matters has two options – it can either exclude the extrinsic materials or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery  and submit the additional supporting material contemplated by Rule 56. *Chambers*, 282 F.3d at 154. "This conversion requirement is 'strictly enforced' whenever a district court considers extra-pleading material in ruling on a motion to dismiss." *Id*.

In the event this Court determines that it is appropriate to take judicial notice of the materials cited by Defendants (which Plaintiff does not concede), it may do so only 'to determine what statements [the public records] contained'; the court may not take judicial notice '*for the truth of the matters asserted*.'" *Epstein v. N.Y.C. Dist. Council of Carpenters Ben. Funds*, 2016 U.S. Dist. LEXIS 56545, at *4 (S.D.N.Y. Apr. 28, 2016) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original). A court may not consider external materials in its ruling when reliance on such materials leads the court to "making a finding of fact that *controvert[s]* the plaintiff's own factual assertions set out in its complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

Based on the foregoing, if this Court does not take judicial notice of the extraneous

materials cited by Defendants, this Court must either ignore Defendants' citations to matters outside the Complaint or deny this Motion and permit the parties the opportunity to develop a record through discovery.  If judicial notice is granted, the motion papers must be analyzed  based on the principle that at this stage, it is only Plaintiff's allegations which are treated as true, and Defendants' extraneous materials receive no such presumption.

## II.    PLAINTIFF HAS ESTABLISHED STANDING FOR HIS CLAIMS

Defendants next argue that Plaintiff lacks standing because he failed to demonstrate an injury in fact.  Motion at pg. 8.   This argument is misguided and betrays a lack of understanding of the applicable legal concepts. "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute...." *Carter,* 822 F.3d at 55*; Raines v. Byrd,* 521 U.S. 811, 818, (1997). Any monetary loss suffered by the plaintiff satisfies this element; "[e]ven a small financial loss" suffices. *Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85 (2d Cir. 2013). In a false-advertising case, "the 'injury is the purchase price.'" *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017), quoting *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at 5 (S.D.N.Y. Dec. 11, 2013). The Second Circuit has described the injury-in-fact requirement as "a low threshold." *John v. Whole Food Markets Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).

### A.  Plaintiff validly establishes standing using a price premium theory.

Rather than addressing their arguments to applicable Second Circuit precedent, Defendants instead present this Court with a survey of inapplicable case law from around the country.  This Court is, of course, bound to follow Second Circuit law and, particularly, case law concerning the New York GBL.  As explained by the Second Circuit, "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'— that is, as a result of the defendant's deception, the plaintiff paid more for a product than he

otherwise would have." *Shaya Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2-3 (2d Cir. 2022).  There is a vast body of case law in this Circuit applying the price premium theory of damages to GBL matters involving deceptive "natural" representations. *See e.g., Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 244 (S.D.N.Y. 2021) (plaintiff alleged in the complaint that "'[p]laintiff and the New York Subclass Members . . . paid a premium for products that were—contrary to [d]efendant's representations—not 'Natural.' Accordingly, [p]laintiff and the New York Subclass Members received less than what they bargained and/or paid for.'  Therefore, [p]laintiff has adequately pleaded that she suffered an injury."); *Segedie*, 2015 U.S. Dist. LEXIS 60739 at *31 ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'"); *Mason v. Reed's Inc*., 18-cv-10826 (JGK), 2021 U.S. Dist. LEXIS 16556 at *4-5 (S.D.N.Y. Jan. 28 2021) (finding a cognizable injury under Sections 349 and 350 of the GBL where "the plaintiff allege[d] injury in that she paid a price premium for the product that she thought was all natural and without preservatives").

In this case, Plaintiff alleges in multiple places in the Complaint that he and other class members paid a price premium, or more than he would have otherwise been willing to pay, because of Defendants' false, misleading, and deceptive representations and that he and other class members received a product that was worth less than what was paid.  Plaintiff alleges that he and the Class Members "paid a premium for a Product that was—contrary to Defendants' representations— not natural."  FAC ¶ 179.  Plaintiff also sufficiently alleges that "[t]he majority of shoppers . . . are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."  FAC ¶ 75.  Plaintiff contends that the Product he received was rendered "worthless or less

valuable" due to the presence of PFAS.  FAC ¶ 85.  These allegations are more than enough to establish an injury pursuant to a price premium theory of damages.

Defendants complain that Plaintiff's allegations concerning its price premium theory are "threadbare" and cites to cases from other jurisdictions where plaintiffs were required to identify comparator prices and products.  Once again, Defendants cannot obtain dismissal of this case by relying on inapplicable case law from other jurisdictions.  In the Second Circuit, "post-*Iqbal* cases have found valid § 349 claims despite plaintiffs not identifying competitors or prices." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014).

### B.  Plaintiff has sufficiently alleged the presence of PFAS in the Product.

Defendants also argue that Plaintiff has failed to "sufficiently allege that the Product he actually purchased contained PFAS."  Motion at pg. 16.  This argument is misguided because it does not comport with the current state of the law in the Second Circuit.  Under prevailing precedent, all a plaintiff is required to do at the pleading stage is to "generally allege facts that, accepted as true, make his alleged injury plausible." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017).  Here, Plaintiff has alleged sufficient facts making it plausible that the Product Plaintiff purchased was contaminated.  As detailed in the FAC, "Plaintiff sought independent third-party testing to determine whether the Product contained PFAS chemicals." FAC at ¶ 54.  "Plaintiff's independent testing was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and was "conducted on a sample collected in July 2022." FAC at ¶ 55.  The date the sample was collected is important because Plaintiff's purchase of the Product also occurred in July 2022.  FAC at ¶ 120.  Ultimately, Plaintiff's independent testing showed the presence of multiple PFAS substances in the Product, in amounts more than 100 times the EPA's recommended levels *Id*. ¶ 62.

These allegations make it more than plausible that the Product purchased by Plaintiff contained PFAS, and "the fact that the plaintiff[] did not actually test the products that [she] purchased does not mean that [she] lack[s] standing." *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499, at *10 (D. Conn. Mar. 13, 2023).   Indeed, Judge Paul Crotty recently observed that the fact that a plaintiff's independent testing was not conducted on the actual product she purchased "need not be fatal, if the independent testing is 'reasonably near in time' to Plaintiffs' own purchases." *Onaka v. Shiseido Ams. Corp*., No. 21-cv-10665-PAC, 2023 U.S. Dist. LEXIS 53220, at *13 (S.D.N.Y. Mar. 27, 2023).   Here, Plaintiff's purchase occurred in the very same month the testing sample was collected.   Thus, based on the current state of the law in the Second Circuit, Plaintiff has standing to pursue his claims.

The cases cited in Defendants' opposition papers from other jurisdictions "are not persuasive because they are not governed by and do not follow the Second Circuit's decision in *John v. Whole Foods*." *Clinger*, 2023 WL 2477499, at *13.   The one case from within the Second Circuit is easily distinguishable.   Unlike Plaintiff here, the plaintiff in *Gaminde*, relied not on his own independent testing, but rather, "independent research funded by the United States Department of Agriculture[] [(USDA)] and published in the Journal of the Science of Food and Agriculture [(hereinafter the Journal)], each bottle of CVS Krill Oil only contains approximately [sixty percent] of the 300mg of Omega-3 Krill Oil represented." *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019). The Court determined that the *Gaminde* plaintiff's "failure to make any allegation regarding how he knows that [the product at issue] was mislabeled—is fatal." *Id*. at *6.   Because the facts here are so different, the *Gaminde* ruling does not support dismissal.

The cases cited by Defendants in support of dismissal on this point are cherry-picked from

other jurisdictions, where the law is different.  (*see* Defendants' citations to cases from other parts of the country on pp. 10-13).  Defendants seem to ignore, or conveniently forget, that Plaintiff's GBL claim derives under *New York law*.  Citing matters decided outside of New York and the Second Circuit provides no valid basis to dismiss Plaintiff's claims.  If the law in this jurisdiction actually supported dismissal, this Court can safely assume that Defendants' would have included those citations in its brief.

### III.   PLAINTIFF'S TESTING ALLEGATIONS ARE MORE THAN SUFFICIENT TO STATE A CLAIM

Defendants also challenge the sufficiency of Plaintiff's allegations concerning independent testing.  To bolster this argument, Defendants cite a series of cases decided by this Court related to the misleading labeling of products containing vanilla.  In each of these cases this Court rejected the testing at issue because it did not actually support Plaintiff's allegations.  In *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-CV-2933 (NSR), 2022 U.S. Dist. LEXIS 15994, at *15 (S.D.N.Y. Jan. 28, 2022), the plaintiff's claims failed because the proffered testing failed to support her claims when it was determined that "the alleged 'artificial flavors' themselves are not in fact 'artificial.'"  In *Turnipseed v. Simply Orange Juice Co.*, 2022 U.S. Dist. LEXIS 38823, at *14-15 (S.D.N.Y. Mar. 4, 2022), the court dismissed plaintiff's claim upon determining that "Plaintiff fails to substantiate how exactly the alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors, much less, that the vanillin and piperonal in the Product were plausibly derived from artificial sources."  Plaintiff's claim in *Myers v. Wakefern Food Corp.*, 2022 U.S. Dist. LEXIS 35981, at *14 (S.D.N.Y. Mar. 1, 2022) was dismissed on the same grounds. ("Plaintiff fails to substantiate how exactly the two alleged findings from the purported lab test helped her arrive at the conclusion that the Product is made of artificial flavors.").  In contrast, in the instant matter Plaintiff's testing directly supports his theory

that the Product was contaminated with PFAS.  Thus, the facts here bear no resemblance to those in *Santiful*, *Turnipseed* and *Myers*.

Based on the foregoing, Defendant's arguments for dismissal are meritless.

## IV. PLAINTIFF HAS STATED VALID CLAIMS UNDER GBL §§ 349 AND 350

To state a claim under New York General Business Law ("GBL") Section 349 or Section 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id*.  Moreover, "'claims under GBL Sections 349 and 350 'are not subject to the heightened pleading requirements of Rule 9(b).'" *Brady v. Anker Innovations Ltd*., No. 18-cv-11396(NSR), 2020 U.S. Dist. LEXIS 5672, at *22 (S.D.N.Y. Jan. 13, 2020)  (quoting *Braynina v. TJX Cos., Inc*., No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016)).

Defendants' further arguments seeking dismissal of Plaintiff's GBL claims fail for the reasons detailed herein.

### A. A "reasonable consumer" analysis should not be performed at the pleading stage but, if performed, Defendants' omissions would deceive a reasonable consumer.

Defendants argue that "Plaintiff fails to set forth factual allegations showing that Defendants' representations are untrue or materially misleading."  Motion at pg. 14.  This is demonstrably false since the Product claims to be "All Natural," yet contains harmful, synthetic PFAS chemicals.   Courts have consistently determined that "[i]t is not unreasonable as a matter of law for a consumer to expect that a product labeled 'natural' to contain only natural, and not synthetic ingredients."  *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 279-80 (E.D.N.Y. 2021) (emphasis added); see also *Petrosino v. Stearn's Prod., Inc*., No. 16-cv-7735

(NSR), 2018 U.S. Dist. LEXIS 55818 at *7 (S.D.N.Y. Mar. 30, 2018) ("[A] reasonable consumer acting reasonably very well could be misled because they could conclude that the 'natural' label on the cosmetics means that they are made with all natural products"); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *29 (S.D.N.Y. May 7, 2015)  ("It is not unreasonable as a matter of law to expect that a product labeled "natural" or "all natural" contains only natural ingredients.).

Moreover, even if the case law did not fall so clearly in Plaintiff's favor, Defendants' argument runs afoul of the principle that a reasonable consumer analysis should not take place at the pleading stage. "While it is possible for a court to decide this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted).  Indeed, the vast majority of courts to have considered this issue have agreed to defer resolution of this question beyond the pleading stage.  *See Buonasera v. Honest Co., Inc*., 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."); *Segedie*, 2015 U.S. Dist. LEXIS 60739, at *12 ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury."); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc*., 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("A court may make [the reasonable consumer determination] as a matter of law, although usually such a determination is a question of fact.").  "Consequently, '[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Mogull v. Pete and Gerry's Organics, LLC*, 2022 U.S. Dist. LEXIS 35237 at *3 (S.D.N.Y. Feb. 28, 2022).

Defendants argue that no reasonable consumer would understand these statements to mean that the Product is free from trace amounts of PFAS.  Motion at pp. 20-21.  Setting aside the false statement about the level of PFAS in the Product being a "trace amount," Defendants' argument defies logic.  As Judge Brodie explained in the lead contamination case *Sitt v. Nature's Bounty, Inc.,* "[a]lthough a consumer reading the nutrition label may note that the Product contains other ingredients besides [those listed], a consumer could nevertheless reasonably conclude that the Product does not contain lead, as the lead content — even if minimal — is not disclosed to consumers."  No. 15-CV-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, at *38 (E.D.N.Y. Sep. 26, 2016).

Defendants contend that *Richburg v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023), is instructive.  In that case, the Court dismissed plaintiff's claim that the defendant engaged in deceptive practices by failing to list PFAS as an ingredient in its popcorn product.  The court's decision in *Richburg* was based on a determination that the FDA "exempts '[s]ubstances migrating to food from equipment or packaging' from compliance with this regulation, meaning that they do not need to be included in the ingredient list." *Id*. at * 22.  Yet, that exemption only applies where inadvertently added substances are present at "insignificant levels." 21 C.F.R. § 101.100(a)(3)(iii).  Here, Plaintiff specifically  contends that the levels of PFAS present in the Product are significant by any reasonable measure.  At worst, the determination of whether the levels of PFAS in the Product are "significant" is a question of fact which cannot be determined at the pleading stage.  *See Stuve v. Kraft Heinz Co.,* No. 21-CV-1845, 2023 U.S. Dist. LEXIS 6184, at *20 (N.D. Ill. Jan. 12, 2023) ("whether phthalates are present only at an "insignificant level" is a question of fact, yet to be resolved."); *Holt v. Foodstate, Inc.,* No. 15cv78 L (JMA), 2015 U.S. Dist. LEXIS 173403, at *11 (S.D. Cal. Dec. 31, 2015) ("whether these

additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding."). Accordingly, *Richburg* is completely distinguishable.

Defendants further rely on a line of factually and legally distinguishable cases in which courts found it was not reasonable for a consumer to claim a product was deceptively advertised as natural when the product contained trace amounts of synthetic herbicides and/or pesticides that incidentally contaminated ingredients during the growing process. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019); *In re General Mills Glyphosate Litig.*, 16 Civ. 2869, 2017 WL 2983877, at *5 (D. Minn. July 12, 2017); *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-cv-06664, 2020 WL 5910071 at *4 (N.D. Cal., October 6, 2020). While the pesticides at issue in those cases were undeniably linked to agricultural processes, the source of PFAS in Defendant's Product is a question of fact that necessitates further discovery. Furthermore, unlike the substances at issue in *Axon*, *Parks, General Mills*, and *Hawyuan Yu*, PFAS was not present in the Product in "accidental and innocuous" amounts, but rather amounts well above trace. FAC ¶ 102. As the court recognized in *Axon*, it would be "*far more misleading* to call a product 'natural' when the defendant have introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." 354 F.Supp.3d at 183.

Here, Plaintiff contends that the amount of PFAS in the Product is significant and not a "trace amount." Reasonable consumers understand that pesticides are commonly used in the production of agricultural products, but reasonable consumers would *not* expect forever chemicals such as PFAS—which serve no functional purpose in agricultural production-- to be present in a juice drink. It is certainly plausible that a reasonable consumer would want to know that a product being purchased contains a significant quantity of a harmful synthetic substance such as PFAS

chemicals.  Accordingly, Defendants have not demonstrated that Plaintiff's GBL claims should be dismissed, and the Motion should be denied.

### B.  Materiality is not a separate element to be pled under the GBL and Plaintiff's allegations are sufficient.

Next, Defendants contend that Plaintiff failed to plausibly allege "materiality."  Motion at pg. 20.  However, a plaintiff is not required to separately plead "materiality" to state a GBL claim. The second element of a GBL claim requires a plaintiff to plead the existence of "a *material* misrepresentation is one that is 'likely to mislead a reasonable consumer acting reasonably *under the circumstances.*'"  *Cooper v. Anheuser-Busch*, LLC, 553 F. Supp. 3d 83, 108 (S.D.N.Y. 2021) (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018)).  "In other words, the materiality requirement is incorporated in the legal standard courts use when evaluating whether plaintiffs have adequately pled the second element of a deceptive labeling claim."  *Id*.  "It does not form some quasi-distinct element that plaintiffs must separately satisfy."  *Id*.  All that is required is that Plaintiff "'plausibly allege[d] that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled' by the Products."  *Id*. (quoting *Twohig v. Shop-Rite Supermarkets, Inc*., 519 F. Supp. 3d 154 (S.D.N.Y. 2021)).  As detailed in Point III(A.), above, it would not be unreasonable for a consumer to expect a product marketed as being natural to contain only natural and not harmful synthetic ingredients. According, Plaintiff has satisfied his pleading burden.

### V. PLAINTIFF HAS SUFFICIENTLY PLED HIS OMISSIONS BASED CLAIMS

Defendants contend that Plaintiff's omissions-based claims are defective because Plaintiff failed to plausibly allege that it had knowledge of the presence of PFAS in the Product, and because the claims are preempted.  As detailed herein, both arguments are meritless.

### A. Plaintiff has sufficiently alleged that Defendants had a duty to disclose the presence of PFAS in its product.

Defendants contend that Plaintiff failed to plausibly allege that Defendants were aware of the presence of PFAS in the product.  However, Defendants seek to hold Plaintiff to a stricter standard than the law requires.  According to Defendants, "To state an omissions-based GBL claim, Plaintiff must allege the defendant's exclusive knowledge at the time of purchase."  Motion at pg. 26.  However, the law does not require the demonstration of "exclusive knowledge."  Instead, an omissions based claim is permitted where "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022) (quoting *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995)).

Plaintiff has plausibly alleged that Defendants possessed superior knowledge concerning the make-up of the Product and knew that consumers were mistakenly relying on notion that the Product lacked dangerous contaminants like PFAS.  Plaintiff alleged that Defendants were aware Defendants have exclusive control over the sourcing of the contents of the Product and the manufacturing process.  FAC ¶ 64.  Plaintiff also alleges that the inclusion of PFAS in the Product was detectable and was not unavoidable and, as such  Defendants should, and can, control for the PFAS chemicals which are contained in its Product.  FAC ¶ 65.  Plaintiff further pled that "Defendants are well aware of consumers' desire to avoid potentially harmful chemicals, which is exactly why it has engaged in an aggressive, uniform marketing campaign intended to convince consumers that the Product is free from artificial ingredients like PFAS."  FAC ¶ 51.  In addition, Plaintiff's pleading shows that "Defendants are well-aware that consumers are increasingly demanding beverage options that support their wellness goals.  As far back as 2017, Coke's President and CEO James Quincey acknowledged changing consumer preferences, noting:

'They're changing around ingredients...whether it be more natural, whether it be organic, whether it be just really understanding the core provenance of where the product is coming from.'" FAC ¶ 71.

Based on the foregoing, this Court should conclude that Plaintiff has plausibly alleged that Defendants had superior knowledge concerning the presence of PFAS in its Product and knew that consumers like Plaintiff were relying on Defendants to provide a product free of harmful substances, such as PFAS.

### B. Plaintiff's omissions claim is not negated by a statutory exemption.

Defendants next argue that Plaintiff's claims are negated by an exemption to the disclosure requirements in the FDCA. Defendants contend that the FDA "exempts '[s]ubstances migrating to food from equipment or packaging' from compliance with this regulation, meaning that they do not need to be included in the ingredient list.'" Motion at pg. 26 (quoting *Richburg*, 2023 U.S. Dist. LEXIS 21137, at *22).

Defendants' argument is flawed for two main reasons. First, Defendants assume, without admissible proof, that PFAS in the Product migrated to food from equipment or packaging. Plaintiff does not profess to know exactly how these significant amounts of PFAS came to be present in Defendants' Product. Though Defendants infer that the PFAS in their Product materialized incidentally, these unfounded assertions are not to be accepted as true at the pleading stage, and "a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Moreover, even if Defendants are correct as to the origin of the PFAS in the Product, incidental food additives are only exempt from traditional labeling requirements if they are present "at insignificant levels" and are "used in conformity with regulations. . . ." 21 C.F.R. §

101.100(a)(3) and (a)(3)(iii).  As detailed above, questions of fact plainly exist at this time as to whether PFAS are present "at insignificant levels" in Defendants' products and whether PFAS were "used in conformity with regulations."  *See Stuve,* U.S. Dist. LEXIS 6184, at *20; *Holt,* 2015 U.S. Dist. LEXIS 173403, at *11.

The cases Defendants cite to support their argument are distinguishable.  In *Lateef v. Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) the plaintiff conceded that the asserted claims were preempted. Plaintiff in this matter makes no such concession, particularly since significant questions of fact exist which must be explored during discovery. Defendants also cite to *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, No. 08-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009), where a court determined that plaintiff's assertion that defendants should have disclosed the presence of BPA in their products was preempted by federal regulations which exempt incidental additives from labeling requirements.  For reasons unknown, the court in that matter appears to not have been presented with the question of whether BPA existed in an "insignificant amount" or was used in accordance with relevant regulations.  Thus, the questions of fact which must be resolved here, and which must be determined in Plaintiff's favor at this phase, were not present in the BPA litigation.

As such, reviewing the pleadings in the light most favorable to Plaintiff, Defendants have not established that Plaintiff's claims are preempted by the NLEA.

## VI. PLAINTIFF VALIDLY BASES A NEGLIGENCE PER SE CLAIM ON VIOLATIONS OF THE FDCA AND AML.

Defendants contend that Plaintiff's negligence per se claim should be dismissed for several reasons.  Defendants argue that this claim is subject to dismissal because there is no private right of action under the FDCA and AML.  This is incorrect.  New York law holds defendants liable

for negligence per se if the following factors are satisfied: (1) the plaintiff is among the class of people for whose particular benefit the statute had been enacted; (2) recognition of a private right of action would promote the legislative purpose behind the statute; and (3) creation of the right would be consistent with the overall legislative scheme. *Gain v. Eastern Reinforcing Serv. Inc.,* 193 A.D.2d 255, 603 N.Y.S.2d 189, 191 (3d Dept.1993).  Proof of violation of a statute may constitute negligence per se, and if such violation is the proximate cause of the injury, liability is established.  *Lawrence v. Sofamor*, S.N.C., 95-CV-1507, 1999 U.S. Dist. LEXIS 12228, at \*18 (N.D.N.Y. Aug. 2, 1999).

Defendants ignore the fact that Courts in this circuit have specifically addressed the question of whether a negligence per se claim can be based on violations of the FDCA.  Indeed, "the Court of Appeals for the Second Circuit has expressly recognized that a private cause of action for per se negligence arises under New York State law upon violation of the FDCA." *Sita v. Danek Med.*, 43 F. Supp. 2d 245, 262 (E.D.N.Y. 1999) (citing *Ezagui v. Dow Chemical Corp.*, 598 F.2d 727, 733 (2d Cir. 1979)).

In addition, Plaintiff's negligence per se claim is not barred by the economic loss doctrine. MTD at 20.  "The New York Court of Appeals has explained . . . that the economic loss rule does not apply across-the-board in all negligence actions."  *In re Mission Constr. Litig.*, 2013 U.S. Dist. LEXIS 124926, at \*51-52 (S.D.N.Y. Aug. 30, 2013) "Under the economic loss doctrine, a defendant is not liable in tort for purely economic loss unless the plaintiff demonstrates that the defendant owed a duty, which 'may arise from a special relationship[,] . . . to protect against the risk of harm to plaintiff.'"  *AMBAC Assurance Corp. v. United States Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018) (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1103 (2001)).  Ultimately, "the economic loss doctrine centers on

whether the defendant owed a duty to protect against the risk of harm to the plaintiff." *AMBAC Assurance Corp.*, 328 F. Supp. 3d at 159. Here, Plaintiff sufficiently alleges that Defendants owed statutory duties under the FDCA and New York law to protect Plaintiff from the harm complained of herein. The existence of these statutory duties renders the economic loss doctrine inapplicable. *See Sackin v. Transperfect Glob., Inc.,* 278 F. Supp. 3d 739, 749-50 (S.D.N.Y. 2017) (denying a motion to dismiss a negligence claim where the Complaint alleges "breach of common law and statutory duties[]").

Accordingly, Defendant's citation to cases which did not concern the FDCA are of no import and do not support dismissal.

## VII. PLAINTIFF HAS STATED A VALID CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT.

Defendants argue that Plaintiff's MMWA claim must be dismissed because there are fewer than 100 named plaintiffs. The requirement for 100 named plaintiffs is found in 15 USCS § 2310(d)(3)(c), which applies to claims brought "under paragraph (1)(B)." However, Plaintiff's MMWA claim does not derive from 15 USCS § 2310(d)(1)(B). Rather, Plaintiff's MMWA claim is brought under 15 USCS § 2310(d)(1)(A) which permits a claim to be filed "in any court of competent jurisdiction in any State or the District of Columbia." As detailed in the Complaint, "this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's Magnuson-Moss claim." Complaint ¶ 166. Defendants do not dispute that this Court has jurisdiction under CAFA. This means that the 100 plaintiff requirement under MMWA is nullified because "once plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply." *Velez v. RM Acquisition, LLC*, No.

21-cv-02779, 2023 U.S. Dist. LEXIS 69976, at *12 (N.D. Ill. Apr. 21, 2023)[2] (quoting *Barclay v. ICON Health & Fitness, Inc*., 2020 U.S. Dist. LEXIS 191215, 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020).

Defendants also contend that Plaintiff's MMWA claim fails because she "does not plead a plausible claim for breach of express or implied warranty." Motion at pg. 22. This is demonstrably false as numerous courts have found "natural" claims to constitute express warranties. *See Grossman*, 516 F. Supp. 3d at 283; *In re Frito-Lay*, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013); *Goldemberg*, 8 F. Supp. 3d at 481 (S.D.N.Y. 2014).

## VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD NOT BE DISMISSED AT THIS TIME.

Defendants next contend that Plaintiff's unjust enrichment claim should be dismissed as duplicative of his other claims. Motion at pg. 30. This is not so. "The elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350." *Warner v. StarKist Co*., No. 1:18-cv-406 (GLS/ATB), 2019 U.S. Dist. LEXIS 48587, at *7 (N.D.N.Y. Mar. 25, 2019). "In contrast to a claim for unjust enrichment, a claim for violating NYGBL § 349 requires '[p]roof that [a] defendant's acts are directed to consumers[.]'" *McCracken v. Verisma Sys*., No. 6:14-cv-06248(MAT), 2017 U.S. Dist. LEXIS 73666, at *22 (W.D.N.Y. May 15, 2017) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20 (1995). "Thus, a reasonable trier of fact could find the elements unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim." *Id*.

Based on the foregoing, this Court should not deem Plaintiff's unjust enrichment claim to be impermissibly duplicative. Instead, Defendants' motion should be denied.

---

[2] The *Velez* court noted that "CAFA was enacted to expand federal jurisdiction over class actions and when Congress enacted CAFA, it did so with the knowledge of the MMWA's jurisdictional requirements." *Velez*, 2023 U.S. Dist. LEXIS 69976, at *11-12.

**IX.    IF THIS COURT IS INCLINED TO GRANT DEFENDANTS' MOTION, LEAVE SHOULD BE GRANTED TO PERMIT PLAINTIFF TO REPLEAD**

Though Plaintiff contends his pleadings state valid causes of action against Defendants, should this Court be inclined to grant Defendants motion to dismiss, Plaintiff should be allowed to replead.  "[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam)).

As the Second Circuit has noted, providing liberal leave to amend is appropriate after dismissal because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  Accordingly, should this Court be inclined to grant Defendant's motion to dismiss, it should instead grant Plaintiff an opportunity to amend his complaint.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated: September 21, 2023

Respectfully submitted,

**THE SULTZER LAW GROUP P.C.**

By:    */s/ Philip J. Furia*

Philip J. Furia
Jason P. Sultzer
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: 845-483-7100
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Gary Klinger*
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
 gklinger@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Erin Ruben*
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Russell Busch (6329500)
J. Hunter Bryson*
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
rbusch@milberg.com
hbryson@milberg.com
zaaron@milberg.com


* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Class*

22