UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JOSEPH LURENZ, individually and on behalf of all
others similarly situated,

                    Plaintiff,

    -against-

THE COCA-COLA COMPANY and THE SIMPLY
ORANGE JUICE COMPANY,

                    Defendants.
_____

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __06/10/2024__ |

No. 22 Civ. 10941 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

       Plaintiff Joseph Lurenz ("Plaintiff") brings this action, on behalf of himself and all others similarly situated, against Defendants the Coca-Cola Company and the Simply Orange Juice Company (collectively, "Defendants"), for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (2) violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349; (3) violation of New York's Deceptive Trade Practices Act, GBL § 350; (4) breach of express warranty; (5) violation of N.Y. Agric. & Mkts. Law § 199-a; (6) negligence per se; and (7) unjust enrichment. (*See* Amended Complaint "Am. Compl.," ECF No. 25.)

       Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (the "Motion", ECF No. 31.) For the following reasons, Defendants' Motion is GRANTED.

**BACKGROUND**

**I.    Factual Background**

       The following facts are taken from the Amended Complaint and assumed to be true for the purposes of Defendants' Motion.

Plaintiff alleges that Defendants formulate, manufacture, market, and sell the Simply® Tropical juice drink (the "Product"). (Am. Compl. ¶¶ 1, 4.) Plaintiff contends that the Product is falsely labeled as an "All Natural" juice drink that is "made simply" with "all-natural ingredients," when, in fact, the Product contains "multiple" substances among the thousands of chemical compounds commonly referred to collectively as "PFAS," including Perfluorooctanoic acid and Perfluorooctanesulfonic acid. (*Id.* ¶¶ 1, 4, 56.) Plaintiff asserts that the danger of PFAS chemicals are well known and PFAS "have been indisputably linked to negative health effects." (*Id.* ¶ 57.)

The Product's label does not list PFAS as an ingredient, but through independent testing, Plaintiff has found the presence of multiple PFAS substances in the Product and "concerning" levels of PFAS. (*Id.* ¶¶ 54, 56, 62.) Plaintiff's independent testing was conducted on "a sample…collected in July 2022." (*Id.* at ¶ 55.) As a result of Defendants' alleged misbranding of the Product as all natural and not containing PFAS chemicals, Plaintiff asserts economic injury, though he does not claim that he or anyone else was physically harmed as a result of consuming the Product. (*Id.* ¶ 148.)

## II.   Procedural History

Plaintiff filed the original Complaint on December 28, 2022. (ECF No. 1.) Defendants initially sought leave on May 22, 2023 (ECF No. 18) to bring a motion to dismiss the initial Complaint. Plaintiff responded on May 25, 2023 (ECF No. 20) opposing leave and informing the Court that he would avail himself of his right to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The Court, *inter alia*, directed Plaintiff to file an Amended Complaint. (ECF No. 23). Plaintiff then filed the Amended Complaint on July 17, 2023. (ECF No. 25.)

On October 19, 2023, Defendants filed the instant Motion (ECF No. 31), as well as a memorandum of law ("Defs.' MoL", ECF No. 32) and reply (ECF No. 35), in support thereof. Plaintiff filed an opposition to Defendants' Motion. ("Pltf.'s Opp.", ECF No. 34). Defendants also submitted multiple notices of supplemental authority to the Court. (*See* ECF Nos. 36-37.)

## LEGAL STANDARD

A claim is subject to dismissal under Rule 12(b)(1) if the Court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See* Fed. R. Civ. P. 12(b)(1). Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020); *see also Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (standing is "threshold matter" in determining district court's jurisdiction to hear case). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When determining a motion to dismiss an action for lack of subject matter jurisdiction, the Court must accept all factual allegations pled in the complaint as true. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

## DISCUSSION

### I.     Standing

When the Court is confronted, as it is here, by a motion raising a combination of Rule 12(b) defenses, it will decide jurisdictional questions before considering whether the complaint states a claim. *See Hernandez v. Wonderful Co. LLC*, No. 23-CV-1242 (ER), 2023 WL 9022844, at *4 (S.D.N.Y. Dec. 29, 2023). Accordingly, the Court first addresses Defendants' arguments as to standing and subject-matter jurisdiction.

Article III of the Constitution of the United States restricts the jurisdiction of federal courts to actual cases or controversies. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To demonstrate Article III standing, a plaintiff must establish: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a "favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To satisfy the injury-in-fact requirement, a plaintiff must allege facts showing that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. at 560. In a potential class action, the named plaintiff must allege that he was personally injured by defendants' conduct. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). A named plaintiff cannot rely on the standing of unnamed potential class members. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Here, Plaintiff asserts a price-premium theory of injury. In other words, Plaintiff alleges that he was injured because he "paid more for" the Product, (Am. Compl. ¶ 95), than he allegedly would have if he had known "that the Product contained or risked containing PFAS and thus risked users to PFAS exposure," (*id.* ¶ 116). The price-premium theory of injury has been broadly accepted in the Second Circuit. *See, e.g.*, *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) ("[plaintiff] has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained financial injury—paying a premium—as a result."); *Onaka v. Shiseido Ams. Corp.*, No. 21 Civ. 10665 (PAC), 2023 WL 2663877, at *4 & n.3 (S.D.N.Y. Mar. 28, 2023) (collecting cases). Even when asserting a price-premium theory, however, plaintiffs still "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of New York Mellon Tr. Co.*,

*N.A.*, 19 F.4th 58, 65–66 (2d Cir. 2021). "While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003).

The Court finds that Plaintiff has failed to show that he suffered an injury-in-fact under the price-premium theory. To assert a price-premium theory of injury, Plaintiff must plausibly allege that he purchased a Product that was misbranded, *i.e.*, that contained PFAS. Plaintiff's contention that the Product he purchased contained PFAS is based solely on a single independent test he had commissioned (Am. Compl. ¶¶ 54-56) that "was conducted in accordance with accepted industry standards for detecting the presence of PFAS" and "detected material levels of multiple PFAS," (*id*. ¶¶ 55-56). But the findings from that test, as alleged in the Amended Complaint, do not plausibly allege any injury with respect to the Products Plaintiff himself purchased. "The Amended Complaint does not allege, for instance, how many [P]roducts were tested…, whether all those tested [P]roducts revealed the presence of PFAS, and if not, what percentage of the [P]roducts had PFAS." *See Hicks v. L'Oreal U.S.A., Inc.,* No. 22 CIV. 1989 (JPC), 2023 WL 6386847, at *8 (S.D.N.Y. Sept. 30, 2023). In addition, Plaintiff did not test the Product that he actually purchased, but rather merely "a sample." (Am. Compl. ¶ 55.) "The fact that Plaintiff did not actually test the Products that he purchased does not automatically mean that he lacks standing. *See Brown v. Coty, Inc.,* No. 22 CIV. 2696 (AT), 2024 WL 894965, at *3 (S.D.N.Y. Mar. 1, 2024). But Plaintiff also does not allege that "the presence of PFAS in the [P]roducts is so widespread as to render it plausible that…Plaintiff purchased a mislabeled [P]roduct at least once." *Id.* (quoting *Onaka*, 2023 WL 2663877, at *4). *Cf. John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (finding allegations regarding study showing that 89% of products were mislabeled and that

plaintiff routinely shopped for those products were sufficient to plausibly allege that the plaintiff purchased at least one mislabeled product). Plaintiff relies only on a single allegation of testing and cites no studies or articles indicating that the Product generally contains PFAS. Without "specific facts concerning the third-party testing forming the basis of his allegations that the Product contains PFAS chemicals, "the Court cannot conclude that the presence of PFAS in [the Product] that Plaintiff[] purchased was anything more than a 'sheer possibility'," *Esquibel v. Colgate-Palmolive Co.,* No. 23-CV-00742-LTS, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (quoting *Iqbal*, 556 U.S. at 678). As they stand, Plaintiff's sparse factual allegations make it "equally plausible that the single test result was a false positive…, or was the result of an isolated incident of contamination." (Defs.' MoL at 18 n.13.)

The allegations in Plaintiff's Amended Complaint are substantively similar to, and fail for the same reasons as, as other recent claims brought before this Court concerning the alleged presence of PFAS in consumer products. *See e.g., Hernandez*, 2023 WL 9022844, at *6 (dismissing claim for lack of standing where plaintiffs' vague allegations regarding testing did not allow the Court to conclude the alleged PFAS presence in pomegranate juice drink was anything more than a sheer possibility); *Esquibel*, 2023 WL 7412169, at *2 (same, but in personal care products); *Hicks*, 2023 WL 6386847, at *10 (same, but in makeup products); *see also Dalewitz v. Procter & Gamble Co*., No. 22-CV-07323-NSR, 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) (finding plaintiff lacked standing because his alleged testing merely demonstrated the presence of fluorine—a proxy for the presence of PFAS—in defendant's product, and, as a result, "Plaintiff fails to plausibly allege [the product] in fact contains PFAS.").

The cases Plaintiff relies upon do not alter this conclusion. Plaintiff cites to *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499 (D. Conn. Mar.

13, 2023) and *Onaka*, 2023 WL 2663877 for the proposition that a plaintiff need not test the products that she purchased to prove standing. (*See* Pltf.'s Opp. at 8.) But the Court in those cases found that plaintiffs *lacked* standing where they failed to establish that they either purchased adulterated products or that PFAS was so widespread that it was plausible that either specific product lines or all of defendant's products contained PFAS. Plaintiff likewise cites to *John*, 858 F.3d at 737 for the notion that a plaintiff need only "generally allege facts that, accepted as true, make his alleged injury plausible." (*See* Pltf.'s Opp. at 7.) But "*John* does not relax the foundational requirement that all reasonable inferences drawn from pleaded facts must be *plausible*. Accordingly, district courts following *John* have still held plaintiffs to the burden of explaining why a third party's analysis can be reasonably extrapolated to the plaintiff's individual purchase." *Kell v. Lily's Sweets, LLC*, No. 23 CIV. 0147 (VM), 2024 WL 1116651, at *5 (S.D.N.Y. Mar. 13, 2024) (emphasis added) (citation omitted). Plaintiff fails to meet that burden here. Unlike the plaintiff in *John,* Plaintiff alleges that he tested only a single sample, and does not allege that the sample was taken from a store he frequented, nor that he "regularly" made purchases and the presence of PFAS in the Product is the result of a "pervasive" or "systematic" practice.

The only way in which Plaintiff attempts to link the testing to the Product he purchased is by asserting that both the testing and his purchase occurred in July 2022. (*See* Am. Compl. ¶¶ 55, 120, 122.) But temporal proximity between the testing and the purchase cannot alone support the inference that the presence of PFAS in a single sample of a Product means PFAS were present in the Product Plaintiff actually purchased, let alone the "tens of thousands" of Products sold during the Class Period. (*See* Am. Compl. ¶ 153.) As this Court has previously explained, where it is "only 'likely' [a plaintiff] might have purchased mislabeled products," and the plaintiff thus "seems impermissibly to ask the Court to infer an injury for [him]," no standing exists. *See Akridge*

*v. Whole Foods Mkt. Grp., Inc.*, No. 20-cv-10900 (ER), 2022 WL 955945, at *7, at *17–18 (S.D.N.Y. Mar. 30, 2022).

In sum, "[t]he Amended Complaint's allegations boil down to describing general and unspecific results of testing, without meaningfully linking those results to Plaintiff['s] actual [p]urchased Products." *See Hicks*, 2023 WL 6386847, at *9. The Court is therefore unable to conclude that Plaintiff has Article III standing, and accordingly dismisses the Amended Complaint without prejudice. *See id.* at *10 ("Where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice") (citation omitted).

Because the Court grants Defendants' Motion pursuant to Rule 12(b)(1), it will not decide Defendants' remaining arguments with respect to Rule 12(b)(6). *See Hernandez*, 2023 WL 9022844, at *7.

## II.    Leave to Amend

Plaintiff has requested leave to replead in the event the Amended Complaint is dismissed. (Pltf.'s Opp. at 21.) "Once a responsive pleading has been filed, [a] plaintiff may amend the complaint only with leave of court." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543 (S.D.N.Y. 2016) (citation omitted). "[I]t is within the sound discretion of the district court" to deny leave to amend "for good reason," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)), including "repeated failure to cure deficiencies by amendments previously allowed" or "futility of amendment," *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Still, there is a particularly strong preference for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); *see also Loreley Fin.*

*(Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Although Plaintiff has already amended his complaint once (*see* ECF No. 25) following a prior round of briefing in which Defendants alerted Plaintiff to the potential deficiencies in his argument for standing (*see* ECF No. 18), "Plaintiff[] did not previously have the benefit of a Court ruling putting [him] on notice of these deficiencies." *See Esquibel*, 2023 WL 7412169, at *4. It may be the case, for instance, that another amended complaint can cure these deficiencies by pleading more details concerning the Plaintiff's testing of the Product. But in any case, Plaintiff "must plead sufficient facts 'to make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief.'" *See Hicks*, 2023 WL 6386847, at *9–10 (quoting *Maddox*, 19 F.4th at 65-66). In the interests of justice, therefore, Plaintiff is granted leave to file a motion to amend, tendering a proposed second amended complaint that meets the requirements of constitutional standing as discussed above.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Amended Complaint is GRANTED.

Plaintiff is granted leave to file a Second Amended Complaint. If Plaintiff chooses to do so, he will have until July 10, 2024 to file a Second Amended Complaint. The Defendants are then directed to answer or otherwise respond by July 31, 2024.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 31.

Dated:   June 10, 2024                            SO ORDERED:
              White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge

10